IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| EQUAL EMPLOYMENT ) | |
| OPPORTUNITY ) | |
| COMMISSION, ) | |
| ) | CIVIL ACTION NO. |
| PLAINTIFF, ) | |
| ) | **COMPLAINT** |
| v. ) | |
| ) | **JURY TRIAL** |
| 1618 CONCEPTS, INC., ) | **DEMAND** |
| 1618 DOWNTOWN, INC., AND ) | |
| NORTHERN LIGHTS INC., ) | |
| ) | |
| DEFENDANTS. ) | |
| _____ ) | |

## NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964, as amended ("Title VII") and Title I of the Civil Rights Act of 1991, to correct unlawful employment practices on the basis of sex and to provide appropriate relief to Peter Matusik ("Matusik"). As alleged with greater particularity herein below, the Equal Employment Opportunity Commission (the "Commission") alleges Defendants 1618 Concepts, Inc., 1618 Downtown, Inc., and Northern Lights Inc. (hereinafter jointly "Defendants"), subjected Matusik to a hostile work environment based on his sex, male, which resulted in Matusik being forced to resign his employment.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 706(f)(1)

and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.§ 2000e-5(f)(1) and (3) and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Middle District of North Carolina.

PARTIES

3. Plaintiff, the Commission, is the agency of the United States of America charged with the administration, interpretation and enforcement of Title VII and is expressly authorized to bring this action by Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1).

4. At all relevant times, Defendant 1618 Concepts, Inc. ("1618 Concepts") has been a North Carolina corporation doing business in the State of North Carolina and the City of Greensboro and has continuously had at least 15 employees.

5. At all relevant times, 1618 Concepts has continuously been an employer engaged in industry affecting commerce under Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

6. At all relevant times, Defendant 1618 Downtown, Inc. ("1618 Downtown") has been a North Carolina corporation doing business in the State of North Carolina and the City of Greensboro and has continuously had at least 15 employees.

7. At all relevant times, 1618 Downtown has continuously been an employer engaged in industry affecting commerce under Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

2

8. At all relevant times, Defendant Northern Lights Inc. ("Northern Lights") has been a North Carolina corporation doing business in the State of North Carolina and the City of Greensboro and has continuously had at least 15 employees.

9. At all relevant times, Northern Lights has continuously been an employer engaged in industry affecting commerce under Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

10. At all relevant times, the named Defendants in this action have operated as an integrated business enterprise.

11. The three named Defendants share employees.

12. There is common ownership among the three named Defendants.

13. The three named Defendants share common management.

14. The same individuals serve as corporate officers for each of the three named Defendants.

15. All human resources functions for each of the three named Defendants are handled out of the same main office location.

16. Employee files for each of the three named Defendants are maintained in the same main office location.

17. The three named Defendants use the same bookkeeper and accounting firm for payroll.

18. At all times relevant to the allegations in this Complaint, the three named Defendants all utilized an anti-discrimination policy that bears the name "1618 Concepts."

3

19. The three named Defendants utilize the same "main office" location at 1618 W. Friendly Road, Greensboro, North Carolina.

20. The three named Defendants share the same email account and company vehicles.

21. 1618 Downtown is the entity named on Matusik's pay stubs.

22. Certain personnel records for Matusik bear the name "1618 Concepts."

23. 1618 Concepts responded to the charge of discrimination filed with the Commission against Defendants by Matusik.

## ADMINISTRATIVE PROCEDURES

24. More than thirty days prior to the institution of this lawsuit, Peter Matusik filed a charge with the Commission alleging violations of Title VII by Defendants.

25. On February 20, 2019, the Commission issued to Defendants a Letter of Determination finding reasonable cause to believe that Title VII was violated and inviting Defendants to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

26. The Commission engaged in communications with Defendants to provide Defendants the opportunity to remedy the discriminatory practices described in the Letter of Determination.

27. The Commission was unable to secure from Defendants a conciliation agreement acceptable to the Commission.

28. On March 3, 2019, the Commission issued a Notice of Failure of Conciliation to Defendants.

29. All conditions precedent to the institution of this lawsuit have been fulfilled.

STATEMENT OF CLAIMS

30. Since at least on or around late fall 2017, Defendants have engaged in unlawful employment practices at Defendants' 1618 Downtown restaurant in violation of Section 703(a) of Title VII, 42 U.S.C. 2000(e)-2(a)(1) as more fully described below. Specifically, Defendants subjected Matusik to severe or pervasive sexual conduct that created a hostile work environment based on his sex, male.

31. Matusik began working at Defendants' 1618 Downtown restaurant as a dishwasher in or around June 2017.

32. Beginning in or around late fall 2017 and continuing through Matusik's employment, a male co-worker of Matusik at Defendants' 1618 Downtown restaurant subjected Matusik to sexual harassment. The sexual harassment included but was not limited to: the male co-worker grabbing Matusik's penis through Matusik's pants; putting his hand down the back of Matusik's pants and between the cheeks of Matusik's buttocks; and grabbing Matusik's wrists to constrain Matusik while making an implied sexual and threatening statement concerning giving "consent."

33. The incidents of sexual touching of Matusik by the male co-worker as described above occurred in approximately two to three-week intervals.

5

34. The male co-worker's sexual conduct was uninvited by Matusik and unwelcome to Matusik. Matusik was offended by the male co-worker's conduct.

35. Defendants were aware of the male co-worker's propensity to engage in sexual behavior in the workplace.

36. For example, in or around September 2017, Defendants were aware that the male co-worker brought something he referred to as a "sex mask" to work, which he showed to other employees.

37. Defendants were aware that the male co-worker wore the "sex mask" while at work.

38. As further example, in or around October 2017, Defendants were aware that the male co-worker discussed his interest in one or more websites related to unconventional sex acts with his co-workers.

39. Defendants were aware that one or more employees were uncomfortable with the male co-worker's discussion of the website or websites related to unconventional sex acts.

40. Defendants were aware of the sexual harassment of Matusik by the male co-worker.

41. One or more members of Defendants' management witnessed one or more of the incidents wherein the male co-worker touched Matusik as set forth above.

42. Matusik complained about the male co-worker's sexual harassment to Defendants' managers in or around November 2017, December 2017, and January 2018. Despite Matusik's complaints, the sexual harassment continued after each complaint.

43. The incident referenced *supra*, wherein the male co-worker grabbed Matusik's wrists and restrained Matusik while making statements concerning "consent" occurred on or about January 20, 2018.

44. Thereafter, on or about January 20, 2018, a female co-worker of Matusik reported the sexual harassment of Matusik to Defendant's management.

45. On or about January 20, 2018, Defendant verbally counseled the male co-worker concerning his sexual conduct toward Matusik.

46. After the male co-worker was verbally counseled, the male co-worker began to go into Matusik's work space unnecessarily and/or stand close to Matusik unnecessarily, in an apparent attempt to intimidate or threaten Matusik.

47. Matusik was in fact intimidated and felt threatened by the male co-worker's conduct because of the male co-worker's prior sexual touching and physical constraining of Matusik. The intimidating conduct by the male co-worker was ongoing.

48. In or around early February 2018, approximately three weeks after the male co-worker physically constrained Matusik while talking about "consent," Matusik attempted to complain to Defendants' managers about the male co-worker's intimidation.

7

49. During the meeting with Defendants' managers Matusik was not allowed to complain and was told there would be no further discussion of the male co-worker's harassment.

50. Because of the egregious sexual harassment, the ongoing intimidating and/or threatening behavior by the male co-worker, and Defendants' refusal to discuss the intimidation with Matusik or address it with the male co-worker, Matusik did not feel safe in the work environment. Matusik felt he had no other choice but to resign his employment and Matusik began looking for alternate employment.

51. On or around February 20, 2018, Matusik met with two of Defendants' managers again concerning his need to be off that day due to illness and to discuss his work environment.

52. During the meeting on or around February 20, 2018, Matusik informed Defendants' management that he did not feel safe working with the male co-worker.

53. In response, one or both of Defendants' managers questioned why Matusik did not find another job if Matusik felt unsafe.

54. Matusik informed Defendants' managers that he was in fact looking for another job.

55. One of Defendants' managers told Matusik if he was so unhappy working for Defendants, that he should find another job "quickly."

56. Matusik did not return to work at Defendants' 1618 Downtown restaurant after February 20, 2018.

57. Defendants subjected Matusik to sexual harassment that created a sexually hostile work environment. Matusik resigned from his employment as a reasonable response to the intolerable working conditions.

58. The effect of the practices complained of above has been to deprive Matusik of equal employment opportunities and otherwise adversely affect his status as an employee because of his sex.

59. The unlawful employment practices complained of above were intentional.

60. The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of Matusik.

## PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendants, their officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from creating or maintaining a sexually hostile work environment or any other employment practice that discriminates on the basis of sex, male.

B. Order Defendants to institute and carry out policies, practices, and programs which provide equal employment opportunities for men which eradicate the effects of its past and present unlawful employment practices.

C. Order Defendants to make Matusik whole, by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief

necessary to eradicate the effects of its unlawful employment practices described above, including but not limited to reinstatement or front pay.

      D.      Order Defendants to make Matusik whole by providing appropriate compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, in amounts to be determined at trial.

      E.      Order Defendants to make Matusik whole by providing compensation for nonpecuniary losses resulting from the unlawful practices complained of above, including past and future emotional pain and suffering, humiliation, embarrassment, anxiety, inconvenience, loss of enjoyment of life, loss of self-esteem and loss of civil rights, in amounts to be determined at trial.

      F.      Order Defendants to pay Matusik punitive damages for its malicious and reckless conduct, as described above, in amounts to be determined at trial.

      G.      Grant such further relief as the Court deems necessary and proper in the public interest.

      H.      Award the Commission its costs of this action.

<u>JURY TRIAL DEMAND</u>

The Commission requests a jury trial on all questions of fact raised by its complaint.

10

Respectfully submitted, this the 9th day of July, 2019.

        EQUAL EMPLOYMENT
        OPPORTUNITY COMMISSION

        JAMES L. LEE
        Deputy General Counsel

        GWENDOLYN YOUNG REAMS
        Associate General Counsel
        131 M Street, NE
        Washington, D.C. 20507

        LYNETTE A. BARNES
        N.C. Bar No. 19732
        Regional Attorney
        Charlotte District Office

        YLDA KOPKA
        (Illinois Bar No. 6286627)
        Supervisory Trial Attorney

        **/s/ Yolanda W. Brock**
        YOLANDA W. BROCK
        (N.C. Bar No. 36651)
        Senior Trial Attorney
        EQUAL EMPLOYMENT
        OPPORTUNITY COMMISSION
        Charlotte District Office
        129 W. Trade St., Suite 400
        Charlotte, NC 28202
        Tel: (704) 954-6463
        Fax: (704) 954-6412

        **ATTORNEYS FOR PLAINTIFF**