IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

EQUAL EMPLOYMENT OPPORTUNITY          )
COMMISSION,                           )
                                      )
                Plaintiff,            )
                                      )
        v.                            )        19-cv-672
                                      )
1618 CONCEPTS, INC., 1618             )
DOWNTOWN, INC., and NORTHERN          )
LIGHTS, INC.,                         )
                                      )
                Defendants.           )

**MEMORANDUM OPINION AND ORDER**

THOMAS D. SCHROEDER, Chief District Judge.

In this employment discrimination case, Defendants 1618 Concepts, Inc. ("1618 Concepts"), 1618 Downtown, Inc. ("1618 Downtown"), and Northern Lights, Inc. ("Northern Lights"), move to dismiss the complaint (Doc. 13), and Peter Matusik seeks to intervene as a Plaintiff (Doc. 10). For the reasons set forth below, the motion to dismiss will be denied, and Matusik's motion to intervene will be granted in part and denied in part.

## I. BACKGROUND

The allegations of the complaint, taken in the light most favorable to the Plaintiff, are as follows:

Matusik began work at 1618 Downtown, a restaurant, as a dishwasher in June 2017. (Doc. 1 ¶ 31.) In the late fall of 2017, a male co-worker began sexually harassing Matusik, including multiple instances of unwanted, explicit sexual touching and

groping. (Id. ¶¶ 32–34.) One or more of Defendants'[1] managers witnessed at least one of these instances of sexual harassment, and Defendants generally were aware of this harassment. (Id. ¶¶ 40–41.) Defendants were also aware that in September 2017 the male co-worker wore a "sex mask" to work, which he showed to other employees, and discussed his interest in websites related to unconventional sex acts. (Id. ¶¶ 36–39.) Matusik complained to Defendants' managers in November and December of 2017, as well as in January 2018. (Id. ¶ 42.) After the co-worker again harassed Matusik on January 20, 2018, a female co-worker reported the incident to management. (Id. ¶ 44.) Following this complaint, management verbally reprimanded the male co-worker, but the co-worker began to act in a way that Matusik viewed as intimidating and threatening. (Id. ¶¶ 45–47.) This included instances of the co-worker standing close to Matusik in an effort to physically intimidate him. (Id. ¶ 46.)

In February 2018, Matusik attempted again to complain to Defendants' managers about the co-worker's conduct, but the managers refused to discuss the harassment. (Id. ¶¶ 48–49.) Later, on February 20, Matusik met with two managers to discuss his need to take off from work that day and to discuss the negative

---

[1] The court refers to Defendants collectively based on Plaintiff's allegations, recognizing that Defendants dispute which entity or entities may be responsible for any alleged harassment.

2

work environment he was experiencing. (Id. ¶¶ 51–52.) When Matusik told them that he did not feel safe working with the harassing male co-worker, the managers asked why Matusik had not found a different job elsewhere and told him that he should do so "quickly." (Id. ¶¶ 53–55.) Following this meeting, Matusik did not return to work. (Id. ¶ 56.)

In May 2018, Matusik filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). (Doc. 13-1.) He identified 1618 Concepts as his employer, and in the section noting "discrimination based on," he checked the box for "sex" and provided the date of discrimination as February 14, 2018. (Id.) In the "particulars" section, he described instances of the harassment from the male co-worker as well as his managers' failure to stop the harassment. (Id.) On June 18, 2018, Matusik filed an amended charge of discrimination in which he provided additional details regarding the history of the harassment he endured, and he marked the boxes indicating he had been discriminated against based on "sex" and had experienced "retaliation." (Doc. 18-4.) In this amended charge, Matusik again identified his employer as 1618 Concepts. (Id.)

On February 20, 2019, the EEOC sent 1618 Concepts, 1618 Downtown, and Northern Lights a letter of determination finding reasonable cause to believe that Title VII violations had occurred. (Doc. 1 ¶ 25.) After conciliation failed, the EEOC filed this

3

action on July 9, 2019.  (Id. ¶¶ 26–28.)

On August 16, Matusik moved to intervene.  (Docs. 10, 11.)
Defendants filed a response in opposition (Doc. 16), and Matusik
replied (Doc. 17).  Defendants also filed a motion to dismiss for
lack of subject-matter jurisdiction and failure to state a claim
(Docs. 13, 14), as well as an answer to the EEOC's complaint.
(Doc. 15).  The EEOC filed an opposition to Defendants' motion to
dismiss.  (Doc. 18.)  Defendants did not file a reply.

## II.  ANALYSIS

### A.  Motion to Dismiss

Defendants move to dismiss for lack of subject-matter
jurisdiction and for failure to state claim pursuant to Federal
Rules of Civil Procedure 12(b)(1) and (6), respectively.

#### 1.  Challenges to the EEOC Charge

Defendants first argue that the court must dismiss the case
for lack of subject-matter jurisdiction for failure of the EEOC to
exhaust its administrative remedies because (1) Matusik's EEOC
charge did not provide notice of a hostile work environment claim,
and (2) it identified only 1618 Concepts and not 1618 Downtown or
Northern Lights.

##### a.  Identification of Claims in the EEOC Charge

Defendants first seek dismissal on the ground that Matusik's
EEOC charge did not allege a hostile work environment claim.

Before bringing a discrimination claim under Title VII, an

4

individual must first timely file an administrative charge with the EEOC. "Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit." Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 963 (4th Cir. 1996). Up until June 2019, "a failure by the plaintiff to exhaust administrative remedies concerning a Title VII claim deprive[d] the federal courts of subject matter jurisdiction over the claim." Jones v. Calvert Grp., Ltd., 551 F.3d 297, 300 (4th Cir. 2009). Neither party has acknowledged, however, that on June 3, the Supreme Court held that Title VII's charge-filing requirement is not jurisdictional, but rather a claims-processing rule. Fort Bend Cty. v Davis, 139 S. Ct. 1843, 1850–51 (2019). See Abadi v. Mecklenburg Cty. Govt., No. 3:17-cv-00435-FDW-DCK, 2019 WL 2546732, at *3 (W.D.N.C. June 20, 2019) (noting that Title VII's requirement that a plaintiff must exhaust all administrative remedies is no longer a jurisdictional issue under Davis, but that the substance of the requirement itself remains unchanged); see also Oswaldo Argueta v. Fred Smith Co., No. 5:19-cv-84-FL, 2019 WL 6337426, at *3 (E.D.N.C. Nov. 26, 2019) (finding that Davis requires that the charge-filing requirement be analyzed under Rule 12(b)(6)); Hodge v. Walrus Oyster Ale House, Civil Action No. TDC-18-3845, 2019 WL 6069114, at *3 (D. Md. Nov. 15, 2019) (applying

Rule 12(b)(6) and not Rule 12(b)(1) to defendants' alleged failure to exhaust administrative remedies under Title VII).    Therefore, Defendants' arguments will be analyzed under Rule 12(b)(6) and not under Rule 12(b)(1).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  In considering the motion, a court first "separates factual allegations from allegations not entitled to the assumption of truth." Sauers v. Winston-Salem/Forsyth Cty. Bd. of Educ., 179 F. Supp. 3d 544, 550 (M.D.N.C. 2016) (citing Iqbal, 556 U.S. at 681).  Conclusory allegations and allegations that are simply a "formulaic recitation of the elements" are not entitled to the assumption of truth.  Id.  (quoting Iqbal, 556 U.S. at 681). The court then determines "whether the factual allegations, which are accepted as true, 'plausibly suggest an entitlement to relief.'" Id. (quoting Iqbal, 556 U.S. at 681).  A claim is facially plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable," demonstrating "more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556–57).  Of course, the court evaluates this burden

against the backdrop of Federal Rule of Civil Procedure 8(a)(2), which provides that a complaint must simply contain a short and plain statement of the claim showing that the pleader is entitled to relief.

A Title VII claim is subject to dismissal "if the EEOC charge alleges discrimination on one basis, such as race, and the formal litigation claim alleges discrimination on a separate basis, such as sex." Jones, 551 F.3d at 300 (applying jurisdictional analysis). A charge meets the requisite standard if it is "sufficiently precise to identify the parties, and to describe generally the action or practices complained of." Chacko v. Patuxent Inst., 429 F.3d 505, 508 (4th Cir. 2005) (quoting 29 C.F.R. § 1601.12(b)).

Defendants rely primarily on Keener v. Universal Cos., Inc., 128 F. Supp. 3d 902 (M.D.N.C. 2015). But this case is readily distinguishable. There, the female plaintiff filed an EEOC charge alleging "sex" discrimination and "retaliation" under Title VII. Id. at 912. She checked the respective boxes for those on the charge form and listed her termination date as the date the discrimination took place. Id. In her subsequent federal lawsuit, she also claimed she was the victim of a hostile work environment under Title VII. Id. at 913. However, no part of her EEOC charge described facts that could be attributable to a hostile work environment claim. Id. Thus, the court found that the plaintiff

had not exhausted her administrative remedies as to that claim.
See id. at 914.

Here, the details Matusik provided in his charge about the alleged harassment were sufficient to put Defendants on notice that he alleged a hostile work environment. He identified his harasser, the harassment, alleged it occurred on multiple occasions, and described how, despite his complaints to management, no action was taken against the male co-worker. (Doc. 18-2.) For example, he alleged, "I was sexually harassed on numerous occasions by a cook," "[t]he harasser physically touched my genitals on more than one occasion," and "I believe I was discriminated against, based on my sex, male when I was sexually harassed . . . ." (Id. at 2.) He alleged in his amended charge, which relates back to his original charge, see 29 C.F.R. § 1601.12(b), that "[w]hile employed, I was subject to a hostile work environment and sexually harassed by a male coworker," "[o]n no less than four occasions I was subjected to significantly severe sexually harassing behavior by a male coworker," and "I believe I have been discriminated against, subjected to a hostile working environment, sexually harassed . . . due to my sex, male . . . in violation of Title VII of the Civil Rights Act of 1964, as amended." (Doc. 18-4 at 2.) Notably, there is no box on the charge form labeled "hostile work environment," but only one labeled "other," which would have required Matusik to then specify

8

the claim in the margin, which is essentially what he did in the description of the alleged conduct. (Docs. 18-2, 18-4.) Matusik's charge also stated that he reported this harassment to his managers, but to no avail. (Id.) Moreover, the EEOC issued its letter of determination to all Defendants, finding "reasonable cause to believe Respondent subjected Charging Party to a hostile work environment based on his sex, male, in violation of Title VII." (Doc. 18-9 at 2.) Efforts at conciliation thereafter followed, based on that letter.

The substance of the charge provided adequate notice of a hostile work environment claim. Consequently, this case is unlike Keener. Defendants' motion to dismiss based on claimed deficiencies in the description of the allegedly unlawful conduct will therefore be denied.

### b. Naming of Parties in the EEOC Charge

Defendants argue that the complaint should be dismissed against Defendants 1618 Downtown and Northern Lights because the EEOC charge and amended charge did not name them but only named Defendant 1618 Concepts. EEOC argues that it has provided adequate notice.

The failure to name a party in an EEOC charge may constitute a failure to exhaust administrative remedies and historically has been understood to be a potential subject-matter jurisdiction defect as to any Title VII claim brought against the unnamed party.

See <u>Alvarado v. Bd. of Trs. of Montgomery Cmty. Coll.</u>, 848 F.2d 457, 458 (4th Cir. 1988). Although neither party has acknowledged it here, either, in light of the Supreme Court's recent decision in <u>Davis</u>, as noted earlier, this requirement is no longer jurisdictional. Accordingly, it will be analyzed under the Rule 12(b)(6) standard.

The purpose of the naming requirement is twofold: (1) to notify the charged party of an alleged violation, and (2) to secure the charged party's compliance with the law. See <u>Alvarado</u>, 848 F.2d at 458-59. If these two purposes are satisfied, the naming requirement has also been satisfied. See <u>Causey v. Balog</u>, 162 F.3d 795, 800-01 (4th Cir. 1998). Furthermore, "[c]ourts are sympathetic to the difficulties of mastering the organizational structure of an employer and naming all corporate entities that may have been involved in the discriminatory conduct" at issue. <u>Keener</u>, 128 F. Supp. 3d at 915 (citing <u>Alvarado</u>, 848 F.2d at 460).

EEOC argues that all Defendants had actual notice of Matusik's charge, and so the naming requirement has been met. The thrust of the argument is that 1618 Downtown and Northern Lights operate functionally under the 1618 Concepts umbrella. EEOC points to the 1618 Employee Handbook given to Matusik when he began work, in which 1618 Concepts is described as "the name given to an umbrella of restaurants" that included 1618 Downtown, 1618 Seafood Grille,

and 1618 On Location.[2] (Doc. 18-8 at 3.) Furthermore, EEOC argues that Matusik's original charge was sent by EEOC via email to Nicholas Wilson, who is the Treasurer of 1618 Concepts, the Registered Agent and President of 1618 Downtown, and the Registered Agent and Vice President of Northern Lights. In its letter of determination, EEOC explicitly identified all three entities individually and invited each to participate in conciliation. (Doc. 18-9.) Thus, EEOC argues, all Defendants had actual notice of the charges and had an opportunity to participate in conciliation, so the purposes of the naming requirement have been met.

Neither party cites Fourth Circuit law holding that a party not named in an EEOC charge may nevertheless be subject to a Title VII suit if it receives actual notice of the EEOC proceeding against it. But other circuits have so held. See, e.g., Virgo v. Riviera Beach Assocs., Ltd., 30 F.3d 1350, 1359 (11th Cir. 1994) (noting that "courts liberally construe this requirement" and applying a multi-factor analysis); Eggleston v. Chi. Journeymen Plumbers' Local Union No. 130, U.A., 657 F.2d 890, 905–07 (7th Cir. 1981) (reversing dismissal on grounds that unnamed party had adequate notice and opportunity to participate in conciliation). And other district courts within the Fourth Circuit have likewise

---

[2] Northern Lights does business as 1618 Seafood Grille and 1618 On Location under the 1618 Concepts umbrella. (Doc. 18-6 at 2-3.)

applied a similar standard.  See, e.g., Lima v. Stanley, No. 5:14-cv-896-FL, 2015 WL 4769546, at *5 (E.D.N.C. Aug. 12, 2015) (relying on case law holding that the naming requirement is met when the unnamed parties receive actual notice of an EEOC charge); EEOC v. AMX Commc'ns, Ltd., Civil No. WDQ-09-2483, 2010 WL 2651570, at *4 (D. Md. June 30, 2010) (finding that the naming requirement had been met when defendants received both notice of EEOC charges and the EEOC's attempt at conciliation); EEOC v. Newtown Inn Assocs., 647 F. Supp. 957, 960 (E.D. Va. 1986) (finding that when defendants "had actual notice and participated in the conciliation process," the naming requirement had been satisfied); Bostic v. Wall, 588 F. Supp. 994, 997 (W.D.N.C. 1984) (noting that "the courts are reluctant to dismiss the unnamed party if he had notice of the EEOC conciliatory efforts and participated in EEOC proceedings"), aff'd, 762 F.2d 997 (4th Cir. 1985).  Courts consider many factors, including the similarity of interest between the named party and the unnamed party; whether the plaintiff could have ascertained the identity of the unnamed party at the time the EEOC charge was filed; whether the unnamed party received adequate notice of the charges; whether the unnamed party had an adequate opportunity to participate in the conciliation process; and whether the unnamed party was actually prejudiced by its exclusion from the EEOC proceedings.  Virgo, 30 F.3d at 1359.

In addition, and in the alternative, EEOC argues that the

"substantial identity" exception to the Title VII naming requirement applies here. Although the Fourth Circuit has only discussed the substantial identity exception in dicta, see Alvarado, 848 F.2d at 461, other courts in this district have applied the exception. See Shaughnessy v. Duke Univ., No. 1:18-cv-461, 2018 WL 6047277, at *3 (M.D.N.C. Nov. 19, 2018); Keener, 128 F. Supp. 3d at 915; Mayes v. Moore, 419 F. Supp. 2d 775, 783 (M.D.N.C. 2006) (quoting Glus v. G.C. Murphy Co., 562 F.2d 880, 888 (3d Cir. 1977)); see also Alvarado, 848 F.2d at 461 (citing seven district court decisions in the Fourth Circuit applying the exception). The exception considers the following factors:

> 1) whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint; 2) whether . . . the interests of a named [party] are so similar as the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings; 3) whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party; 4) whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party.

Mayes, 419 F. Supp. 2d at 783 (citing Glus, 562 F.2d at 888). Of these factors, the second and third speak most directly to the dual purposes of the Title VII naming requirement. Keener, 128 F. Supp. 3d at 915-16.

Defendants argue that the substantial identity exception does not apply because the first factor favors them. That is, they

13

argue, Matusik could have reasonably determined the identity of his employer -- 1618 Downtown -- based on his pay stubs and paychecks, which identified it as his employer. (Doc. 14 at 5-6.) They argue that Matusik's knowledge of this, coupled with his failure to name 1618 Downtown in his EEOC charge or amended charge, is fatal to the claim against that Defendant.

Defendants' argument, which is illustrated by their reliance on Mayes, is unpersuasive. Mayes involved an executive who named in his EEOC charge only the company for which he served as chief financial officer, but who then sued numerous other related companies, including the defendant, even though he was also the estate manager of the defendant, who had a controlling interest in his employer. Mayes, 419 F. Supp. 2d at 778-79. The court found that plaintiff's high-level position and role as estate manager gave him knowledge of all the relevant companies such that he could have "reasonably ascertain[ed] the identity of all the Defendants and should have known of [the company's] affiliated businesses." Id. at 783. Here, by contrast, Matusik was a dishwasher and had no prior knowledge of the corporate structure of the Defendants. The employee handbook[3] Matusik was provided identifies "1618

---

[3] EEOC's complaint references the anti-discrimination policy contained within the handbook (Doc. 1 ¶ 18), and Matusik provided a copy in connection with his motion to intervene (Doc. 10-2). No party has challenged the accuracy of the handbook. The court can therefore properly consider its contents here. See Plymouth Cty. Ret. Ass'n v. Primo Water Corp., 966 F. Supp. 2d 525, 536 (M.D.N.C. 2013).

Concepts" in large font on the front page and repeatedly refers to "1618 Concepts" and not "1618 Downtown" throughout. (Doc. 10-2.) Similarly, the form Matusik was required to sign acknowledging receipt of the handbook bears a heading of "1618 Concepts," and his termination form, filled out by his managers, likewise bears a heading of "1618 Concepts." (Doc. 18-7.) Under these circumstances, the court cannot say that Matusik should have known, through reasonable effort, that 1618 Downtown, and not 1618 Concepts, was his employer.

Defendants do not address the remaining factors of the substantial identity exception, and the court treats them as unchallenged. In any event, each favors EEOC's position.

The second factor considers whether the interests of the named party in the EEOC charge were so similar to the unnamed party for the purpose of obtaining voluntary conciliation and compliance that it would be unnecessary to include the unnamed party in the EEOC proceedings. According to the complaint, the three Defendants named in this lawsuit are closely interrelated. They share employees and have common ownership, management, and corporate officers. (Doc. 1 ¶¶ 11-14.) All three Defendants share a "main office" location, where employee files for all three Defendants are maintained. (Id. ¶¶ 19, 16.) The three Defendants also share an email account and company vehicles. (Id. ¶ 20.) These allegations, in addition to those discussed above that 1618

Concepts functioned as an umbrella for various "1618"-themed restaurants, favor EEOC's argument that Defendants are interrelated.

The third factor considers actual prejudice to the unnamed party. EEOC reiterates that all three Defendants were specifically named in EEOC's letter of determination and were each invited to participate in conciliation such that they had effective notice from the inception of EEOC's investigation into Matusik's case. This third factor favors EEOC.

The fourth factor examines whether the unnamed party has represented to the complainant that its relationship with him is to be through the named party. EEOC notes that after it sent its letter of determination to all three Defendants, only 1618 Concepts -- the umbrella organization -- responded and engaged with EEOC. This fourth factor favors EEOC.

Examining all the relevant factors, the court finds that the dual purposes of the naming requirement have been satisfied. Importantly, Defendants had actual notice of the charge and were permitted to participate in conciliation. Defendants' motion to dismiss 1618 Downtown and Northern Lights based on a failure to exhaust administrative remedies will therefore be denied.

### 2. Failure to State a Claim

Defendants also seek dismissal of all claims brought against 1618 Concepts and Northern Lights for failure to state a claim

upon which relief can be granted because neither employed Matusik and thus do not fall under Title VII's definition of "employer." EEOC contends that all three Defendants are proper because they operate as an "integrated enterprise." The standard under Rule 12(b)(6) previously set forth applies.

An "employer" who can be held liable under Title VII is defined as a "person engaged in an industry affecting commerce who has fifteen or more employees . . . ." 42 U.S.C. § 2000e(b). Where more than one entity may be involved, the Fourth Circuit has held that the "integrated employer" or "integrated enterprise" test may be used to determine whether companies are "so interrelated that they constitute a single employer." Hukill v. Auto Care, Inc., 192 F.3d 437, 442 (4th Cir. 1999), abrogated on other grounds by Arbaugh v. Y & H Corp., 546 U.S. 500 (2006).[4] Defendants argue that the court should instead apply a "joint employment" theory to determine whether 1618 Concepts and Northern Lights are employers. But they misconstrue both the law of this circuit and the facts alleged by EEOC.[5] The "integrated employer" theory is the proper approach here.

---

[4] Hukill interpreted the employer question under Title VII as a jurisdictional issue, but Arbaugh abrogated on those grounds. However, the "integrated employer" test is still used in the Fourth Circuit. See Gilbert v. Freshbikes, LLC, 32 F. Supp. 3d 594, 602 n.1 (D. Md. 2014).

[5] Defendants rely on Butler v. Drive Auto. Indus. of Am., Inc., 793 F.3d 404 (4th Cir. 2015). But Butler, in adopting a "joint employment" theory, noted that the "integrated employer" and "joint employment" doctrines are distinct theories that apply in different contexts. Id.

The "integrated employer" doctrine involves consideration of four elements: (1) common management; (2) the inter-relation between operations; (3) the degree of centralized control of labor relations; and (4) the degree of common ownership and financial control. See Hukill, 192 F.3d at 442. Although no one factor is conclusive, traditionally the control of labor operations is considered the most important, as it speaks most directly to the issue of control between the employers at issue. See id.; but cf. Gilbert, 32 F. Supp. 3d at 602 (citing to other cases finding that not all four factors need be present for the theory to apply).

EEOC's allegations are sufficient at this stage to survive Defendants' motion to dismiss. The same facts the court found relevant in the Title VII naming requirement analysis support a claim that Defendants were an integrated enterprise, with 1618 Concepts serving as the overseer of the "1618"-themed restaurants, including 1618 Downtown. All three organizations share common management (Doc. 1 ¶¶ 13-14), share employees (id. ¶ 11), and

---

at 408 n.3. The quintessential application of the "joint employment" theory occurs when "one employer while contracting in good faith with an otherwise independent company, has retained for itself sufficient control of the terms and conditions of employment of the employees who are employed by the other employer." Id. at 408 (quoting Torres-Negrón v. Merck & Co. Inc., 488 F.3d 34, 40 n.6 (1st Cir. 2007)). Both the "joint employment" and "integrated employment" doctrines remain good law. The "integrated employment" theory is the more relevant of the two doctrines here because the relationship among the Defendants includes a parent-subsidiary affiliation, see id. at 408 n.3 (quoting Murphy-Taylor v. Hofmann, 968 F. Supp. 2d 693, 725 (D. Md. 2013)), and EEOC has alleged that the Defendants operated "as an integrated business enterprise," not as joint employers. (Doc. 1 ¶ 10.)

operate out of the same corporate office location (id. ¶¶ 15–16, 19).  Furthermore, employees of the restaurants were given a handbook that referred to the grouping of restaurants as falling under the "1618 Concepts" heading.  (Id. ¶ 18.)  These allegations speak to each of the four relevant factors and are highly suggestive of collective control by 1618 Concepts over the restaurants, rendering the claim plausible.  Thus, Defendants' motion to dismiss will be denied.

### B.  Motion to Intervene

Matusik seeks to intervene as Plaintiff, and his proposed complaint brings four claims for relief: (1) breach of contract; (2) constructive discharge in violation of public policy; (3) negligent retention of the male co-worker who allegedly harassed him; and (4) violation of Title VII.  (Doc. 10-1.)  Defendants filed an opposition brief, arguing that intervention as to Matusik's first two claims should be denied as futile; otherwise, Defendants do not address the other claims.  (Doc. 16.)

Intervention as of right is governed by Federal Rule of Civil Procedure 24(a).  Upon timely motion, intervention must be granted under Rule 24(a)(1) if an "unconditional right to intervene [is provided] by federal statute," and intervention must be granted under Rule 24(a)(2) if the person "claims an interest relating to the . . . transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter

impair or impede [his] ability to protect [his] interest, unless existing parties adequately represent that interest."

The timeliness requirement is generally not strictly enforced under Rule 24(a). See Brink v. DaLesio, 667 F.2d 420, 428 (4th Cir. 1981). The court retains "reasonable discretion" when considering this issue, Virginia v. Westinghouse Elec. Corp., 542 F.2d 214, 216 (4th Cir. 1976), and should consider "how far the suit has progressed, the prejudice that delay might cause other parties, and the reason for the tardiness in moving to intervene." Scardelletti v. Debarr, 265 F.3d 195, 203 (4th Cir. 2001), rev'd on other grounds, Devlin v. Scardelletti, 536 U.S. 1 (2002).

Matusik's motion is undoubtedly timely. EEOC filed its complaint on July 9 (Doc. 1), and Matusik moved to intervene on August 16. (Docs. 10, 11.) Defendants had not yet filed a motion to dismiss. Defendants do not argue that they would be prejudiced by allowing Matusik's intervention, and there is no reason to believe Matusik's intervention would be disruptive or delay the progression of this case.

As noted, Defendants do not address Matusik's negligent retention and Title VII claims. The court therefore considers the motion uncontested to that extent and will allow intervention as to those claims. See Local Rule 7.2(a)(4); Local Rule 7.3(k); see also Siler v. Lejarza, 1:19cv403, 2019 WL 6219956, at *6 (M.D.N.C. Nov. 21, 2019) (failure to substantively respond to an argument

may result in the argument being considered unopposed).  Moreover, Matusik has a statutory right to intervene as to the Title VII claims.  42 U.S.C. § 2000e-5(f)(1); Fed. R. Civ. P. 24(a)(1); <u>EEOC v. Waffle House, Inc.</u>, 193 F.3d 805, 810 (4th Cir. 1999), <u>rev'd on other grounds</u>, 534 U.S. 279 (2002).

As to the remaining putative claims, Matusik must show (1) an interest in the subject matter of the action, (2) that disposition of the action may practically impair the movant's ability to protect that interest, and (3) that the interest is not adequately represented by the existing parties.  <u>Newport News Shipbuilding & Drydock Co. v. Peninsula Shipbuilders' Ass'n</u>, 646 F.2d 117, 120 (4th Cir. 1981).[6]  Defendants argue that Matusik does not have an interest in the subject-matter of the suit as it relates to his proposed claims for breach of contract and constructive discharge in violation of public policy, which they contend fail as a matter of law and are therefore futile.  Each claim will be addressed in turn.

### 1.  Breach of Contract Claim

Matusik seeks to pursue a breach of contract claim based upon Defendants' failure to provide a harassment-free workplace in violation of the representations found within the employee

---

[6] Although the text of Rule 24(a)(2) differed at the time of this decision, the difference in phrasing is immaterial here.

handbook provided to him, as well as those made by Defendants'
managers. (Doc. 10-1 ¶¶ 30-36.) Matusik claims that these
promises -- although not a unilateral contract -- materially
induced him to accept the "at-will employment contract." (Doc. 17
at 4.) His proposed complaint alleges that as a proximate result
of Defendants' breach of their "duties and promises regarding a
harassment-free workplace, Matusik was unable to continue his
employment with 1618." (Doc 10-1 ¶ 35.)

North Carolina is an at-will employment state, <u>Kurtzman v.
Applied Analytical Indus., Inc.</u>, 493 S.E.2d 420, 422 (N.C. 1997),
and Matusik acknowledges that his employment was at will. (Doc.
17 at 4.) When no express contract between an employee and
employer exists, "the relationship is presumed to be terminable at
the will of either party without regard to the quality of
performance of either party." <u>Kurtzman</u>, 493 S.E.2d at 422.
Limited exceptions exist to "either prohibit status-based
discrimination or to insure the integrity of the judicial process
or the enforcement of the law." <u>Id.</u> at 422-23.[7] Mere
representations of "negotiations and circumstances
characteristically associated with traditional at-will employment

---

[7] Such exceptions have been identified as a promise of a specific time
period for employment; discharge based on a statutorily-prohibited
factor, such as race or religion; and discharge based on the employee's
compliance with applicable law (such as filing a workers' compensation
claim or refusing to violate state or federal labor law). <u>Kurtzman</u>, 493
S.E.2d at 422-23.

situations" cannot form the basis for altering the at-will doctrine. Id. at 423. Further, North Carolina law is clear that even when an employment manual details the expected conduct of the employer (e.g., providing a harassment-free work environment), the terms do not automatically become included within an at-will contract. Rosby v. Gen. Baptist State Convention of N.C., Inc., 370 S.E.2d 605, 608 (N.C. Ct. App. 1988), disc. review denied, 374 S.E.2d 590 (N.C. 1988); see also Walker v. Westinghouse Elec. Corp., 335 S.E.2d 79, 83–84 (N.C. Ct. App. 1985).

Here, there was no express contract between Matusik and Defendants. The employee handbook is not a contract, and none of its terms converted the employment relationship into a contractual one.[8] Matusik has not alleged that any of the recognized exceptions applies. His argument that he only accepted employment after receiving promises that Defendants would guarantee a harassment-free workplace does not alter the result. His breach of contract claim therefore fails as a matter of law, and his motion to intervene as to that claim will be denied.

---

[8] The first page of the employee handbook sets out that the "handbook is neither a contract for employment nor a legal document. The language used in the handbook should not be construed as creating a contract . . . between 1618 Concepts and any of its team members . . . . As a team member . . . you have the  right to terminate your employment at any time.  1618 Concepts retains the same right, with or without cause, regardless of any other Company documents or oral or written statements issued by any 1618 Concepts representative, with the exception of written contracts signed by the President." (Doc. 10-2 at 3 (emphasis added).)

## 2. Constructive Discharge

Matusik also seeks to bring a claim for constructive discharge under state law. Defendants argue that this claim is futile because North Carolina does not recognize a claim for constructive discharge contrary to public policy. (Doc. 16 at 6.)

Resolution of this issue turns on the interpretation of a North Carolina Court of Appeals decision, Whitt v. Harris Teeter, 598 S.E.2d 151 (N.C. Ct. App. 2004), and a one sentence reversal by the North Carolina Supreme Court. 614 S.E.2d 531 (N.C. 2005) (per curiam). The court of appeals determined that a claim for constructive discharge in violation of public policy exists under state law. Whitt, 598 S.E.2d at 157–58. Judge McCullough dissented. First, he argued that North Carolina did not recognize a claim of constructive discharge in violation of public policy, and second, he contended that if such a claim were cognizable, the majority had failed to apply the proper elements to the claim. Id. at 159 (McCullough, J., dissenting). On appeal, the North Carolina Supreme Court reversed "[f]or the reasons stated in the dissenting opinion." Whitt, 614 S.E.2d at 532. The North Carolina Supreme Court has not since clarified on which of the two grounds of Judge McCullough's dissent its reversal rested.

Given this historical context, this court should not attempt to parse the Supreme Court's statement reversing Whitt to find that the cause of action exists. See Time Warner Entm't-

Advance/Newhouse P'ship v. Carteret-Craven Elec. Membership Corp., 506 F.3d 304, 314 (4th Cir. 2007) (cautioning that a federal court "should not create or expand [a] State's public policy," nor should it "elbow its way into this controversy to render what may be an uncertain and ephemeral interpretation of state law") (citations omitted).  Without more, Matusik has failed to show that North Carolina recognizes a claim for constructive discharge contrary to public policy.  This conclusion aligns with the holdings of other courts in this district.  See Littell v. Diversified Clinical Servs. Inc., No. 1:10cv152, 2013 WL 1951912, at *7, *7 n.6 (M.D.N.C. May 10, 2013) ("The failure of the [North Carolina] Supreme Court to clarify whether it endorsed one (and if so, which one) or both of the alternative prongs of the dissenting opinion [in Whitt] leaves some ambiguity as to the state of North Carolina law in this context.  That ambiguity, however, does not inure to Plaintiff's benefit."), adopted in part, rejected in part by 2013 WL 5430518 (M.D.N.C. Sept. 27, 2013); see also Armitage v. Biogen Inc., 1:17cv1133, 2019 WL 1789909, at *8 (M.D.N.C. Apr. 24, 2019). Thus, Matusik's motion to intervene as it relates to his claim for constructive discharge in violation of public policy will be denied.

## III. CONCLUSION

For the reasons stated,

IT IS THEREFORE ORDERED that Defendants' motion to dismiss

(Doc. 13) is DENIED and Matusik's motion to intervene (Doc. 10) is GRANTED as to his proposed claims alleging Title VII violation and negligent retention, but is otherwise DENIED.  Matusik shall file and serve his intervention complaint, as permitted, forthwith.


                                    /s/   Thomas D. Schroeder
                                  United States District Judge

January 7, 2020